IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **GLEN DAVID MCELDERRY,**<br><br>　　　　　　**Plaintiff,**<br><br>vs.<br><br>**PRAXAIR HEALTH CARE SERVICES, INC.**<br><br>　　　　　　**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:04CV13DAK |

This matter is before the court on Defendant Praxair Health Care Services, Inc.'s Motion for Summary Judgment. The court held a hearing on the motion on January 19, 2006. At the hearing, Plaintiff was represented by David Holdsworth, and Defendant was represented by Rick Roskelie. The court took the motion under advisement. The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order dismissing Plaintiff's claims.

## BACKGROUND

Praxair provides medical equipment pursuant to physicians' orders for clients in their homes. Plaintiff began working for Whitmore Oxygen Company on August 27, 1990, as a sales territory manager. In 1998, Praxair purchased Whitmore Company, and Plaintiff began working for Praxair as a sales territory manager. Plaintiff continued to work in that capacity until Praxair

purchased Interwest Medical in or about 2001. After Praxair's purchase of Interwest Medical, Plaintiff began working as a respiratory technician at a Praxair facility that had been owned and operated by the company.

As a respiratory technician, Plaintiff was responsible for delivering oxygen and other respirator-related products to individuals at their homes. Plaintiff would also provide individuals with any necessary paperwork, including written instructions that informed individuals on how the equipment worked and any warnings associated with the use of the equipment. With respect to oxygen products, Plaintiff was responsible for informing individuals of the dangers associated with oxygen—for example, its ability to rapidly accelerate combustion. The warning for users of oxygen tanks recommended that users not smoke in their homes or within 25 feet of an oxygen tank.

Similarly, employees of Praxair who drive fleet vehicles are prohibited from smoking in or within 25 feet of the vehicle. Praxair's smoking policy specifically instructs Praxair drivers not to smoke in the cab or cargo compartments of any Praxair vehicle. Praxair's policy also specifically instructs Praxair drivers not to smoke within 25 feet of an PDI product vehicle, loading dock, or product storage unit or cylinder.

Plaintiff admits that he knew the company's smoking policy prohibited him from smoking in his Company vehicle and within 25 feet of his company vehicle. On April 2, 2003, however, Becky Richens, Plaintiff's then-immediate supervisor, noticed a cigarette lighter on the dashboard of Plaintiff's Praxair vehicle. Richens inspected the vehicle and found cigarette ashes in the vehicle and cigarette burns on the vehicle's seats. Richens also found that the vehicle's cigarette lighter appeared to have been used. As a result of this incident, Richens removed all

vehicle cigarette lighters from Praxair vehicles. Richens and Ian McCracken, Praxair's Human Resources Manager, and Lynnae Nappolie met with Plaintiff the next day to discuss his work performance and smoking behavior. During the meeting, Plaintiff admitted that he had smoked in his company vehicle. As a result, Plaintiff received a written warning that he may be further disciplined, up to and including termination, if he continued to smoke in his company vehicle.

Two months later, on June 11, 2003, Richens and Jason Moural, Praxair's Area Operations Manager, discovered more cigarette ashes in Plaintiff's company vehicle and noticed that the vehicle smelled like cigarette smoke. Richens and Moural reported their findings to Wendell Bellah, Praxair's Branch Manager, who also saw the evidence of Plaintiff's smoking in the vehicle. Bellah and Richens approached Plaintiff and asked him to explain how the cigarette ashes got into his company vehicle. Plaintiff denied smoking in the vehicle, but he admitted to smoking outside of the vehicle, within 25 feet of the vehicle. Plaintiff suggested that the ashes must have blown into the vehicle through an open window. Although Plaintiff contends that he did not smoke in his company vehicle after he received his written warning, he admitted during his deposition that it was reasonable for Richens to assume that he had smoked in his vehicle based on the evidence she found on June 11, 2003.

On the morning of June 11, 2003, Bellah, Moural, and Richens decided to suspend Plaintiff pending further investigation of his conduct. After discussing Plaintffs' behavior with Praxair's human resources department, Bellah, Moural, and Richens decided to discharge Plaintiff. Praxair contends that the decision to terminate Plaintiff employment was made on the same day as the suspension. Jason Moural, who participated in the decision-making process, sent an email with Plaintiff's termination form attached to it to Denise Shannon in Praxair's

human resources division at 4:46 p.m. on June 11, 2003. Plaintiff does not dispute that this email was sent, but he contends that Praxair could have changed its mind before the time it notified him of his termination on June 12, 2003 at approximately 4:30 p.m. On the morning of June 12, 2003, Plaintiff went to see his doctor regarding anxiety. At 3:26 p.m. on June 12, 2003, Plaintiff faxed a letter from his physician, also dated June 12, 2003, notifying Praxair that Plaintiff required leave from June 12, 2003 through June 26, 2003 due to anxiety and work-related stress.

  Praxair alleges that Bellah had tried to reach Plaintiff on the afternoon of June 11, 2003, and the morning of June 12, 2003, but he was unsuccessful. Plaintiff claims that when he spoke to Bellah on the afternoon of June 12, 2003, he told Bellah, "I think you better hold off a minute here because I have faxed you the doctor's order to be off work for two weeks because of mental stress and job-related stress, and that I think this is something we need to talk about." Plaintiff states that Bellah did not tell him that he was too late or that Praxair would not hold off. Therefore, Plaintiff claims that he was unsure as to whether he had been terminated until June 26, 2003, when he viewed a letter Praxair had sent to his physician. Praxair contends that it did not offer or extend Plaintiff a leave of absence for his reported illness because it had made the decision to terminate Plaintiff before receiving the medical request from Plaintiff's doctor.

  Plaintiff asserts that he informed Richens and Nappolie that he was under a doctor's care for depression and anxiety and that he was on medication for those conditions. After treatment for depression in 1999, Plaintiff admits that he was able to come back to work and work on a fairly consistent basis with the medication the doctor prescribed. Plaintiff occasionally requested time off for reasons related to his depression and Praxair always granted his request. With the

exception of his June 12, 2003 facsimile, Plaintiff never requested FMLA leave.

Praxair maintains policies and procedures regarding discrimination, including discrimination based on disability. It also has provisions in its employee handbook regarding short term disability leave and leave under the Family and Medical Leave Act. Praxair informs all employees that its employee handbook is not a contract of employment, and Plaintiff acknowledges that he was an at-will employee.

Plaintiff's Complaint alleges four causes of action against Praxair: (1) discrimination under the Americans with Disability Act ("ADA"); (2) discrimination in violation of the Age Discrimination in Employment Act; (3) violation of an employee handbook; and (4) violation of the Family Medical Leave Act. Praxair moves for summary judgment on each of these claims. In response to Praxair's motion, Plaintiff has voluntarily withdrawn his age discrimination claim.

## DISCUSSION

Defendant argues that Plaintiff cannot establish the requisite prima facie case for any of his claims. In addition, Plaintiff cannot rebut Praxair's legitimate, non-discriminatory reason for discharging Plaintiff. Plaintiff argues that he can make out a prima facie case and there are factual disputes that preclude summary judgment.

**1. ADA Claim**

Plaintiff's first cause of action alleges that Praxair discriminated against him by failing to accommodate his disability under the ADA. To establish a claim under the ADA, a plaintiff must make out a prima facie case of discrimination based on a disability. *Butler v. City of Prairie Village*, 172 F.3d 736, 748 (10th Cir. 1999). If the plaintiff establishes a prima facie case, the burden shifts to his employer to offer a legitimate, non-discriminatory reason for the

employment decision. *Id.* at 747. Once the employer articulates a reason for the employment action, the burden shifts back to the Plaintiff to show that the stated reason is a pretext for discrimination. *Id.*

Defendant asserts that Plaintiff cannot establish that he is a disabled person within the meaning of the ADA and he cannot rebut its legitimate, non-discriminatory reason for the employment decision.

*A. Prima Facie Case*

To state a prima facie case of discrimination in violation of the ADA, Plaintiff must establish that (1) he is a disabled person within the meaning of the ADA, (2) he is able to perform the essential functions of the job with or without reasonable accommodation, and (3) his employer discriminated against him because of his disability. *Id.* at 748.

Defendant argues that Plaintiff cannot establish that he is a disabled person under the ADA. The ADA defines the term "disability" to mean "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). It is undisputed in this case that Plaintiff suffers from depression. Plaintiff states that he been treated for nervousness, agitation, and anger for five years. And, he was also dealing with his wife's health problems–namely, multiple back surgeries and low oxygen level. Although he acknowledges that after his treatment in 1999 he was able to work quite well, he does assert that in August of 2002 and in mid-October of 2002 he took a week off from work and totally isolated himself from everything.

Defendant, however, asserts that Plaintiff's alleged depression is not an impairment that limits one or more of his major life activities because it did not affect his ability to perform the

functions of his job. Plaintiff argues that he does not allege that he was substantially limited in the major life activity of working. In fact, he claims that the major life activity of working is irrelevant. Rather, Plaintiff claims that his inability to control his emotions and socialize with people is a major life activity and the substantiality of his impairment creates an issue of fact as to whether his impairment is substantially limiting to this major life activity.

Whether a particular activity is a "major life activity" is a question of law. *Poindexter v. Atchison, Topeka, Sante Fe Railway*, 168 F.3d 1228 (10th Cir. 1999). "Merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg. Kentucky, Inc. v. Williams*, 122 S. Ct. 681, 690 (2002). An impairment that interferes in only a minor way with the performance of tasks does not qualify as a disability. *See id.* at 691.

Plaintiff argues that because the *Toyota* Court looked at manual tasks that are of central importance to daily life that the court in this case should consider not only how Plaintiff's mental impairment affected thinking and learning with others in the workplace but in the activities of daily life outside of the workplace. Plaintiff recognizes that *Toyota* interpreted the term "substantially limited" to mean that the individual must have an impairment that prevents or severely restricts the individual from doing activities—the impairment's impact must be long term or permanent and serious or severe.

Plaintiff contends that there are adequate questions of fact regarding his disability to overcome the pending motion for summary judgment. The court agrees that it should not weigh the evidence as to whether Plaintiff has proven that he is significantly restricted in performing a major life activity. Plaintiff, however, has failed to put forth any specific evidence–medical or otherwise–to demonstrate how his alleged disability substantially limits his ability to control his

emotions or interact with others. There is no evidence of how the impairment manifests itself in any concrete way in the workplace or in life in general. Such an impairment is not a substantial impairment under the ADA.

Furthermore, Plaintiff cannot demonstrate that his termination was because of his disability. A plaintiff "must show that [he or she] was terminated because of [his or her] disability, or that the employer terminated the plaintiff 'under circumstances which give rise to an inference that the termination was based on [his or her] disability." *Bulter v. City of Prairie Village*, 172 F.3d 736, 748 (10th Cir. 1999). To make this showing, plaintiff must "present some affirmative evidence that disability was a determining factor in the employer's decision." *Id.*

Plaintiff has failed to offer any direct or circumstantial evidence that the reason for his discharge was at all related to his depression, his inability to control his emotions, or his inability to interact with others. Plaintiff fails to make any connection between his alleged disability and his discharge. The court, therefore, concludes that Plaintiff has not established a prima facie case of discrimination based on his alleged disability.

   *B. Pretext*

Even if Plaintiff had established a prima facie case, Defendant contends that it terminated Plaintiff solely for his violation of the company's no-smoking policy, which constitutes a legitimate and non-discriminatory business reason for discharging Plaintiff. *Moore v. Inmont Corp.*, 608 F. Supp. 919, 927 (N.C.D.C. 1985) ("Plaintiff's breach of the fully published no-smoking policy/automatic termination policy was a legitimate, non-discriminatory reason for the employment decision.").

It is undisputed in this case that Praxair had a no-smoking policy for its employees who

drove company vehicles. Plaintiff acknowledges that he was given a written warning for violating the policy in April of 2003 and that, on June 11, 2003, he was suspended pending an investigation based on Praxair's belief that he was smoking in or near his company vehicle.

Plaintiff asserts that what is disputed in this case is whether Plaintiff did, as a matter of fact, violate the company no-smoking policy again after the April 2003 written warning and whether the company enforced its no smoking policy in a uniform, non-discriminatory, non-retaliatory manner. Plaintiff contends that Praxair has not met its burden in eliminating dispute as to those propositions.

Plaintiff, however, misunderstands the employer's burden in this type of case. Praxair has provided its basis for terminating Plaintiff's employment. Once it has provided a legitimate, non-discriminatory basis for its decision, it is Plaintiff's burden to demonstrate that the stated reason is merely a pretext for discrimination. In order for the employer's stated reason to be considered legitimate, it need not eliminate all doubt as to its validity.

In the context of deciding pretext, the Tenth Circuit has held that "[w]hen assessing a contention of pretext, [the court] examine[s] the facts 'as they appear to the person making the decision to terminate [the plaintiff]." *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1261 (10th Cir. 2001). The Tenth Circuit has similarly held that "it is the manager's perception of the employee's performance, and not the employee's subjective evaluation of [his or] her performance, that is relevant in determining pretext." *Id.* The court may not "second guess the business judgment of the employer." *Id.*

Therefore, the standard is whether Praxair made an appropriate business decision with the information that it had at the time it made the decision to terminate Plaintiff, not whether

Plaintiff in fact violated the policy. Whether Plaintiff in fact violated the no-smoking policy a second time need not be determined. It is not Praxair's burden to show that there is no other possible basis for its decision. It is Plaintiff's burden to show that there is some sort of inconsistency that calls the decision into question.

In this case, Plaintiff admitted that it was reasonable for his supervisors to assume that he had violated the policy a second time. And, even though he denied smoking in the vehicle, Plaintiff admitted that he had been smoking within 25 feet of the vehicle. Given these admissions, Plaintiff cannot demonstrate that Praxair's reason for his termination was a pretext for discrimination.

### C. Retaliation

To the extent that Plaintiff contends that he has an ADA retaliation claim because Praxair allegedly retaliated against him for submitting his medical leave request, the claim lacks merit. Plaintiff cannot establish a causal link between his need for an accommodation and his discharge because Praxair received his request for leave following its decision to terminate his employment. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) ("Employers need not suspend previously planned [adverse employment action] upon discovery that a [plaintiff engaged in protected activity.]")  In an ADA accommodation case, an employer's denial of an accommodation after a plaintiff has already committed a terminable offense is not a violation of the ADA. *See Hill v. Kansas City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999) (finding plaintiff's request for accommodation "untimely" when plaintiff made the request after she committed the offense of twice sleeping on the job").

Although Plaintiff was not notified of Praxair's decision until after he faxed his leave

request, the documentary evidence demonstrates that Praxair made its decision on June 11, 2003, the day before he submitted his request. In addition, there is no evidence of motive given that Praxair had accommodated all of his requests for time off related to his alleged disability before his suspension. Therefore, there is no basis for a retaliation claim under the ADA.

**2. Breach of Employee Handbook**

Plaintiff's third cause of action is for violation of the employee handbook for failing to honor the provision of the handbook that obligates the company to provide FMLA leave and to pay short-term disability pay. The express language of the employee handbook states that it is not an enforceable contract. It provides that "[a]lthough you are urged to become familiar with this handbook, it is not a contract of employment under which enforceable rights arise." In addition, the handbook states that "[y]ou should be aware that the benefits, principles and practices are described as they exist as of the date of publication, and that the company may add, change or discontinue any aspect of its policies and benefits program at any time."

Plaintiff argues that he is not challenging the at-will nature of his employment. Rather, he is claiming that the company failed to honor the provision obligating it to provide FMLA leave and to pay short-term disability. Plaintiff asserts that he satisfied both requirements, but he did not receive short-term disability benefits Praxair had agreed to offer him in the handbook. However, the express language of the handbook demonstrates that it is not intended to serve as an enforceable contract. It is intended as an informative tool only. Even if the employee handbook was construed as a contract, there is no evidence of breach since Defendant had suspended and decided to terminate Plaintiff before he requested leave. Accordingly, the court finds that Praxair is entitled to summary judgment on this claim.

### 3. FMLA Claim

Defendant argues that Plaintiff cannot establish a claim under the FMLA because he submitted his request for leave after Praxair made the decision to discharge him. Plaintiff argues that the same disputes involved in his ADA claim prevent summary judgment on this claim as well. Plaintiff claims that whether he engaged in protected activity, whether he suffered an adverse action, and whether there is a causal link between his protected activity and his adverse action hinges on the factual issue as to the timing of Plaintiff's request for leave in relation to the company's decision regarding termination. He claims that because his termination was communicated to him an hour after he faxed his leave request, the reason for the termination is suspect.

Courts, however, have refused to find FMLA misconduct even in cases where employees were discharged for performance deficiencies or misconduct discovered after the employee had already commenced an FMLA leave. *McBride v. Citgo Petroleum*, 281 F.3d 1099 (10th Cir. 2002). There is undisputed documentary evidence that Praxair made its decision to terminate Plaintiff on June 11, 2003. A plaintiff cannot establish a causal link if the employer made the decision to discharge the plaintiff before he or she engaged in protected activity. Even though Praxair's decision was not communicated to Plaintiff until after he submitted his leave request, employers need not suspend previously planned adverse employment action upon discovering that a plaintiff has engaged in protected activity.

In addition, Plaintiff cannot demonstrate that the discharge for violation of the no-smoking policy was a pretext for discrimination under the FMLA. Accordingly, Praxair is entitled to summary judgment on the FMLA claim.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's case is dismissed in its entirety, each party to bear his or its own costs and fees.

DATED this 27th day of January, 2006.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge